**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Judge Raymond P. Moore**

Civil Action No. 12-cv-01249-RM-KMT

KATHRYN GUY,
  as mother, next of kin and executor of the estate of James Guy, deceased,

Plaintiff,

v.

NATHAN JORSTAD,

Defendant.

---

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

---

## I.        INTRODUCTION

This matter arises from a police shooting the occurred at approximately 8:12 am on April 22, 2011, which Plaintiff alleges resulted in "deprivation under color of law, of Plaintiff's rights under the 4th and 5th amendments to the United States Constitution and for tortus [sic] behavior under Colorado State Law." (ECF No. 33, p.1, ¶ 2;pp.4-5). Plaintiff Kathryn Guy is "the mother, next of kin and executor of the estate of James William Guy, deceased." (ECF No. 33, p.2, ¶ 5).

Defendant, Nathan Jorstad (Defendant) is an officer of the Colorado Springs Police Department (CSPD) and is being sued for his actions "undertaken in the regular course of his

1

employment . . . .", which resulted in the death of James William Guy (Decedent). (ECF No. 33, p.2, ¶ 6; pp. 4-5). Kathryn Guy (Plaintiff) seeks compensatory damages and attorney fees, costs and funeral and burial expenses. (ECF No. 33, p.8).

Pursuant to Fed.R.Civ.P. 56, Defendant moves for summary judgment and dismissal of Plaintiff's claims against him. (ECF No. 96). Defendant argues that: (1) Plaintiff has failed to comply with this court's Civil Practice Standards, Section IV.B.2.b, despite the court's invitation to do so; (2) there is no genuine dispute as to any material fact and (3) Defendant's use of force was reasonable as a matter of law and he is therefore entitled to qualified immunity from suit. (ECF Nos. 96; 116).

## II      FACTUAL BACKGROUND

### A.      Undisputed Facts

Plaintiff failed to file a separate statement disputing Defendant's material facts despite this court's explicit invitation to do so. (ECF No.115). After careful review of the entire record, the court considers the following to be undisputed facts.

Decedent's next door neighbor located at 1714 Auburn Drive, called Colorado Springs Police (CSPD), early on the morning of April 22, 2011[1], to report that the Decedent was firing rounds from a handgun from his back yard at 1718 Auburn Drive. (ECF Nos. 96, p.2; 97, pp.1-2; 97-4, p.1). This address is located in a densely occupied residential neighborhood. (ECF Nos. 97-3, p.2; 97-6). Officer Jeremy Tidwell was dispatched as a result of that call. (ECF No. 97, pp1-2; ECF Nos. 97-1, p.2; 97-2, p.4; 97-5, p.2).

---

[1] The entire incident occurred within a total of approximately 24 minutes (from 7:48 am to 8:12 am). See e.g., (ECF Nos. 97, p.1; 97-2, p.7).

That same morning CSPD Officers Farrow and Jorstad (Defendant) were working in motorcycle traffic enforcement at a location near the neighborhood from which the incident was reported.  (ECF No. 96; ECF Nos.97, p.1; 97-1, p.1; 97-2, pp.2-3; 97-4).  They heard the call for cover and responded along with the dispatched officer.  (ECF Nos. 97-1, pp.2-4; 97-4, p.1; ECF No. 110, Ex.A, pp.8-9).

While on their way, the officers received further notice from the dispatcher that another party had called in from the neighborhood and reported that seven shots had been fired.  (ECF No. 97-4, p.1).  The dispatcher also relayed to the responding officers that last year there had been a T.E.U[2]. incident at the 1718 Auburn Drive address.  (ECF No. 97-3, pp.2-3).

The officers met at the corner of the street to develop a plan before approaching the address.  (ECF Nos. 97-1, pp.3-5; 97-3, p.3; 97-4, pp.1-2; 97-5, p.4).  While getting back to their vehicles to approach the suspect house, Officer Tidwell reported to dispatch (at approximately 8:03 am), that he heard two more shots fired.  (ECF No.97-4, p.2; 97-5, p.4).  At this time the neighborhood had not been evacuated.  (ECF Nos. 97, p.5; 97-3, p.3).

The three officers parked their vehicles south of 1714 Auburn Drive and approached 1718 Auburn Drive on foot.  (ECF No. 97-1, p.5; 97-2, pp. 6-7; 97-5, pp. 4-5).  Officer Farrow requested and received a description of the suspect shooter.  (ECF No. 97-4, p.2).  As the officers reached the front yard of 1714 Auburn Drive they heard more gunshots coming from the backyard of 1718 Auburn Drive.  (ECF No. 97-1, p.5; 97-2, p.8; 97-4, p.3; 97-5, p.8).

The six-foot privacy fence and shed that occupies the space between the 1714 and 1718 Auburn Drive houses obstructed the officers' view of the 1718 Auburn Drive backyard.  (ECF

---

[2]  T.E.U. refers to the Tactical Enforcement Unit which is a special weapons and tactics (SWAT) team used in high-risk circumstances.  (ECF  Nos. 97-3, p.3; 97-4, p.2).

No.97-1, p.6; 97-2, p.9; 97-7; 97-8, p.1).  Officer Farrow moved to the 1718 Auburn Drive's

garage where, unable to see anyone through the garage windows, he determined he needed to go

around the northeast corner of 1718 Auburn Drive to neighboring 1722 Auburn Drive in order to

view the suspected shooter.  (ECF No. 97-1, pp.9-10; 97-2, p.11; 97-5, p.6; 97-7).

Upon climbing onto the fender of a boat parked at 1722 Auburn Drive, Officer Farrow

was able to view the Decedent stumbling about in an intoxicated manner in the 1718 Auburn

Drive backyard.  Officer Tidwell stayed at the front of 1714 Auburn Drive behind the tree near

the property line to control onlookers while the Defendant entered the reporting party's home at

1714 Auburn Drive.  (ECF No. 97-1, pp.9-12; 97-3, p.4; 97-5, pp.6-7).

After instructing the reporting party to sequester herself and her dogs in an interior room

with the door closed, Defendant looked out the kitchen window of 1714 Auburn Drive, and saw

the Decedent sitting at a table in his backyard.  (ECF No. 97-1, p.12).  Defendant observed

Decedent put his gun within arm's reach and then hunch over and appear to re-load the

magazine.  (ECF Nos. 97-1, pp.12-14; 97-4, p.4; 110, p.2).  At this time, Decedent's gun was

empty and not in a firing position.  *Id.*

Defendant radioed his fellow officers that he thought the Decedent was re-loading and

that the reporting party had disclosed that she believed the Decedent was shooting straight ahead

(to the west), rather than in the air.  (ECF No. 97-4, p.4).  Defendant asked Officer Farrow if he

"had eyes on also?"  (ECF Nos.97, p.13; 97-4, p.4).  Officer Farrow reported that he did and that

he was in the 1722 Auburn Drive backyard behind cover.  *Id.*  Defendant disclosed his position

at the 1714 Auburn Drive kitchen window to Officer Farrow and stated that he believed they

were in a crossfire position.  (ECF Nos. 97, p.14; 97-4, p.4).  Officer Farrow did not disagree.

*Id.* Defendant then told Officer Farrow that he was "going to try to position myself so that . . . fired shots would be going toward the suspect house." (ECF No.97-4, p.4). Officer Farrow "copie[d]." *Id.*

Defendant was in the reporting party's house for approximately ninety seconds before exiting the kitchen to crouch behind the wooden fence separating the two properties. (ECF Nos. 110, pp.2-3; 116, p.2). Within seconds of Defendant exiting the kitchen, his radio received a loud, audible transmission. (ECF Nos. 97, p.15; 97-1, p.20).

Immediately after the transmission, Defendant saw (through the fence slats), the Decedent stand up, grab his gun and walk toward the sound of the radio transmission. (ECF Nos. 97, p.16; 97-1, pp.20-21). Defendant did not announce his presence or issue any commands or warnings to the Decedent. (ECF Nos. 97, p.17; 97-1, p.24; 97-3, p.7; 110, pp.2-3).

Both Defendant and Officer Farrow had their guns raised and pointed at the Decedent as he walked approximately six feet from the table toward the fence behind which Defendant crouched. (ECF Nos. 97, pp.18-19; 97-1, p.20; 97-2, p.14; 97-3, p.8). Decedent raised his gun to a level position pointing it toward the direction of the radio transmission while slowly scanning it horizontally in a one to two foot arch. *Id.* Decedent was not facing Defendant when Decedent raised his gun. (ECF Nos. 110, pp.3-4; 116, p.2).

Defendant aimed at the center mass of Decedent and fired a single shot through the fence. (ECF Nos. 97, p.19; 97-1, pp.20, 24-25). Officer Farrow saw the Decedent immediately fall to the ground and mistakenly radioed dispatch that the Decedent had shot himself at 8:12 am. (ECF Nos. 97, p.20; 97-1, pp.24-25; 97-2, p.16; 97-4, p.4). Immediately after firing the single shot,

Defendant radioed that shots were fired and the "suspect down; still alive." (ECF 97-4, p.4). Medical support was dispatched immediately. *Id.*

Later, Detective Gysin's examination of the 1718 Auburn Drive back yard located 18 expended .40 caliber cartridge casings and one .40 caliber Springfield Armory pistol. (ECF Nos. 97, p.20; 97-9, p.2). He also observed three defects, one in a tree and two in the fence surrounding 1718 Auburn Drive, consistent with fresh projectile (bullet) impact; the defects' locations indicated that they were fired at an approximately horizontal angle from within the 1718 Auburn Drive backyard. (ECF Nos. 97, pp.20-21; 97-9, p.2).

### III.   LEGAL STANDARD

Summary judgment is appropriate only if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Henderson v. Inter-Chem Coal Co., Inc*., 41 F.3d 567, 569 (10th Cir. 1994); *Bones v. Honeywell Int'l, Inc.,* 366 F.3d 869, 875 (10th Cir. 2004). Whether there is a genuine dispute as to a material fact depends upon whether the evidence presents a sufficient disagreement to require submission to a jury or conversely, is so one-sided that one party must prevail as a matter of law. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248-49 (1986); *Stone v. Autoliv ASP, Inc*., 210 F.3d 1132 (10th Cir. 2000); *Zwygart v. Board of County Comm'rs,* 483 F.3d 1086, 1090 (10th Cir. 2007).

A fact is "material" if it pertains to an element of a claim or defense; a factual dispute is "genuine" if the evidence is so contradictory that if the matter went to trial, a reasonable party could return a verdict for either party. *Anderson*, 477 U.S. at 248. The court must resolve factual ambiguities against the moving party, thus favoring the right to a trial. *Houston v. Nat'l*

*General Ins. Co.*, 817 F.2d 83, 85 (10th Cir. 1987); *Quaker State Mini-Lube, Inc. v. Fireman's Fund Ins. Co.*, 52 F.3d 1522, 1527 (10th Cir. 1995).

## IV.    DISCUSSION

Plaintiff in her Amended Complaint alleges that Defendant violated her Fourth Amendment rights and Colorado State law when he "intentionally, negligently and with complete and deliberate indifference . . .us[ed] a degree of force that was unreasonable under the circumstances and in violation of [Decedent's] right to be free from unreasonable seizures under the 4th Amendment."  (ECF No. 33, pp.1, 6).  Defendant moves for summary judgment arguing that he is entitled to qualified immunity against plaintiff's excessive force claim because his use of deadly force did not violate clearly established law.  (ECF No. 96, p.4).

### A.    Officer Liability:

Qualified immunity shields public agents not only from liability at trial, but also from the burdens associated with preparing for trial.  *Mitchell v. Forsyth,* 472 U.S. 511, 526 (1985).  This protection enables governmental officials to act in their official capacities without fear of unwarranted litigation.  *Davis v. Scherer,* 468 U.S. 183, 195 (1984).  Thus, the question of whether qualified immunity protects a particular defendant is properly ruled on well in advance of trial.  *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1986).

When a defendant asserts a qualified immunity defense, the burden of proof shifts to the plaintiff who must establish that the defendant's actions violated (1) a constitutional or statutory right that, (2) was clearly established.  *Albright v. Rodriguez,* 51 F.3d 1531, 1534 (10th Cir. 1995); *Scull v. New Mexico,* 236 F.3d 588, 595 (10th Cir. 2000).  In determining whether the right was clearly established, the court assesses the objective legal reasonableness of the action at

the time of the alleged violation and asks whether "the right [was] sufficiently clear that a reasonable officer would understand that what he is doing violates that right." *Wilson v. Layne,* 526 U.S. 603, 615 (1999).

Summary judgment based on qualified immunity is appropriate if the law did not put the officer on notice that his conduct would be clearly unlawful or if the plaintiff fails to satisfy either part of the two-part inquiry. *Albright,* 51 F.3d at 1535. If the plaintiff does establish a clearly established right was violated then the burden shifts to the defendant, who must prove that no genuine issues of material fact exist so he or she is entitled to judgment as a matter of law. *Id.* In other words, although the court reviews the evidence in the light most favorable to the nonmoving party, the record must clearly demonstrate that the plaintiff has satisfied his or her two-part burden or, the defendant is entitled to qualified immunity." *Medina v. Cram,* 252 F.3d 1124, 1128 (10th Cir. 2000)(quotation omitted).

**B.   Fourth Amendment Excessive Force Claim:**

It is well established that excessive force claims are subject to the Fourth Amendment's reasonableness requirement. *Graham v. Conner,* 490 U.S. 386, 395 (1980). In this instance it is undisputed that in firing the shot that killed the Decedent, the Defendant used deadly force[3] and thus a Fourth Amendment seizure occurred.

In evaluating an excessive force claim particularly in the context of use of deadly force, courts must consider the totality of the circumstances since not all use of deadly force is unconstitutional. *Saucier v. Katz,* 533 U.S. 194, 205 (2001). The objective reasonableness of an officer's use of force must be assessed considering the totality of the specific circumstances and

---

[3] Deadly force is that which the actor uses with the purpose of causing or that he knows to create a substantial risk of causing, death or serious bodily harm i.e., purposely firing a firearm in the direction of another person constitutes deadly force. *Ryder v. City of Topeka,* 814 F.2d 1412, 1416 n.11 (10th Cir.1987)(approving Model Penal Code definition).

with the understanding that "police officers are often forced to make split-second judgments - in circumstances that are tense, uncertain, and rapidly evolving - about the amount of force that is necessary in a particular situation." *Graham*, 490 U.S. at 396-97.

The court must also analyze whether the officer's own reckless or deliberate conduct during the seizure unreasonably created the need to use such force. *Sevier v. City of Lawrence*, 60 F.3d 695, 699 (10th Cir. 1995)(following *Graham*, 490 U.S. at 395). In doing so only those events immediately connected with the actual seizure are considered. *Sevier*, 60 F.3d at 699. An officer's negligent actions precipitating a confrontation are not actionable. *Daniels v. Williams*, 474 U.S. 327, 333 (1986)("injuries inflicted by governmental negligence are not addressed by the United States Constitution . . .").

In assessing the degree of threat facing officers, the court considers the following non-exclusive factors: (1) whether the officers ordered the suspect to drop his weapon and whether the suspect complied with that order; (2) whether any hostile motions were made with the weapon toward the officer; (3) the distance between the officer and the suspect; and (4) the manifest intentions of the suspect. *Estate of Larsen v. Murr, 511 F.3d 1255, 1260 (10th Cir. 2008).*

There is no dispute that the Defendant did not give a force warning or identify himself to the Decedent before the application of force occurred. Nor is there any dispute that Defendant was in the kitchen of 1714 Auburn Drive for approximately 90 seconds during which time he intermittently looked through a closed window which was partially obscured by a blind. Similarly it is undisputed that Defendant had been alerted by dispatch that a T.E.U./Swat Team had been dispatched to 1718 Auburn Drive on a previous occasion. And it is undisputed that the

Decedent had fired his gun multiple times sometimes in a horizontal direction, endangering his immediate neighbors; that he was staggering and appeared drunk; appeared to be reloading the gun's magazine just prior to hearing the Defendant's radio transmission, that upon hearing the transmission, he immediately picked up his gun, and advanced toward that sound while leveling his gun and scanning it back and forth horizontally.

In the totality of these circumstances I find that a reasonable officer would in this instance, have probable cause to believe that the Decedent was an imminent threat to both the officer observing him and to his neighbors engaged in their routine early morning activities. The use of deadly force was therefore both reasonable and constitutional.

Even assuming that deadly force was necessary, I must still consider the question posed by plaintiff whether the Defendant's behavior in failing to identify himself to the Decedent before exiting the 1714 Auburn Drive kitchen, coupled with his lack of a force warning was not only inconsistent with CSPD policy but reckless. (ECF No. 110, pp.2-3). Plaintiff argues that in the ninety seconds in which Defendant was in the neighboring kitchen, he should have opened the kitchen window and announced his presence to give the Decedent a chance to drop his weapon. *Id.* Plaintiff further contends that Defendant's decision to leave the relative safety of the kitchen to crouch behind the wooden fence was deliberate and reckless. *Id.* However plaintiff does not support these allegations with any admissible evidence of either specific facts or opinion. She instead relies heavily on an unsworn expert report and unauthenticated documents conventionally filed on a flash drive – all filed without any supporting affidavits. (ECF No.111).

Defendant responds that plaintiff's lack of a separately filed dispute to any material facts together with her reliance on incompetent evidence (the unsworn report and other unauthenticated documents), are fatal to her claim against the Defendant.  (ECF No.116, pp.1-4). Defendant also asserts that for the following seven reasons, his decision not to issue a pre-force warning or command from the 1714 Auburn Drive kitchen was objectively reasonable and not reckless.  (ECF No.116, pp.5-6).

First, Defendant states that during his 90 seconds in the kitchen he was collecting information regarding the Decedent's position and actions, ascertaining his fellow officer's whereabouts; securing the safety of the neighboring reporting party and communicating with his fellow officers.  *Id.*  He did not fire his gun while in the kitchen and nothing about his brief presence in the kitchen later caused Decedent to pick up his gun and walk toward the radio's sound with his gun raised, so Defendant's time in the kitchen is not immediately connected to his later application of deadly force .  (ECF No. 116, p.6).

Second, Defendant did not believe that the Decedent could hear anything he might say through the closed kitchen window.  *Id.*  While in the kitchen, Defendant observed that Decedent was within arm's reach of his gun.  *Id.*

Third, Defendant believed that if he alerted the Decedent to the police presence and Decedent began firing again, the surrounding houses would provide only concealment not cover[4] so that the neighbors and he would be endangered.  (ECF No. 116, pp.6-7).

---

[4] Defendant explained (and plaintiff did not dispute this definition) that cover is used to describe something that will stop bullets whereas concealment is something that merely obscures/hides your position.  (ECF Nos.97, p.10; 97-1, p.19).

Fourth, Defendant, upon learning of Officer Tidwell's location, was concerned that they were in a dangerous crossfire situation.  (ECF No. 116, p.7).

Fifth, Defendant argues, that even ignoring those safety concerns, he would not have been able to safely respond to any shooting that might occur in response to a warning because in order to open the window he would have to raise the blinds to unlock and slide the window open which would mean he would not have control of his weapon.  *Id.*

Sixth, Defendant notes that the Decedent was not yet contained on the west side of his yard and so could have fled into the neighborhood in response to a warning thereby further endangering the neighbors.  *Id.*

Finally, Defendant did not know if there was anyone else inside 1718 Auburn Drive who might also be armed and ready to open fire upon a police warning.  (ECF No. 116, pp.7-8).

In this instance, Defendant's actions just prior his "use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham* 490 U.S. at 396.  It is well established that, "so long as a reasonable officer could have believed his conduct was justified, a plaintiff cannot avoid summary judgment by simply producing an expert's report that an officer's behavior leading up to the deadly confrontation was imprudent, inappropriate or even reckless." *City and County of San Francisco, Calif. v. Sheehan,* 135 S.Ct. 1765, 1777(quotation omitted).  In the face of an imminent threat, a warning is not inevitably required even before the use of deadly force. *Thompson v. Salt Lake County*, 584 F.3d 1304, 1321 (10th Cir. 2009).

To be imminent, the threat must be more than a mere possibility. *Cordova v. Aragon,* 569 F.3d 1183, 1190 (10th Cir. 2009).  The undisputed facts in this instance are that the

neighborhood had not been evacuated; that the Decedent was intoxicated; that Defendant believed (and later investigation confirmed), that the Decedent had fired his gun in a level or horizontal trajectory rather than simply up in the air; and that upon hearing the transmission of a police radio, the Decedent did not leave his weapon on the table and walk away from it to investigate but rather, immediately picked up his gun (the magazine of which he had previously appeared to re-load), and advanced toward the area where he heard the Defendant's radio transmission.

While doing so the Decedent moved his gun back and forth in a horizontal fashion leading the Defendant to reasonably believe the Decedent was scanning for a target and therefore making a hostile motion at a close range.  A reasonable officer in the Defendant's position would therefore have feared not only for his own life but that of the Decedent's neighbors and have believed the threat posed to be actual and imminent.

Therefore while Decedent James Guy's death is a regrettable tragedy, given Plaintiff's lack of competent support for her assertion that Defendant's actions were reckless, the absence of any argument or evidence that raises a genuine issue of fact regarding that claim, and after careful consideration of the volatile situation confronting Defendant, I find that Defendant had sufficient reason to believe he used the amount of force necessary in this particular situation. *Graham,* 490 U.S. at 396-97, see also *Estate of Larsen,* 511 F.3d at 1260 ("reasonable officer need not await the glint of steel before taking self-protective action; by then, it is often . . . too late . . . .")(quotation omitted).

Finally, Plaintiff's claim based on violations of state law or police procedures is not actionable under Section 1983. *Romero v. Bd. of County Comm'rs*, 60 F.3d 702, 705 (10th Cir. 1995)(violations of state law and police procedure generally do not give rise to a §1983 claim).

Considering the totality of the circumstances and undisputed facts in this matter, I therefore find that a reasonable officer would have had probable cause to think there was an immediate threat of serious physical harm to him and/or others.  Under the proscribed qualified immunity analysis I find that Plaintiff has failed to meet her initial burden and Defendant is entitled to qualified immunity from all liability in this matter.

## V.   CONCLUSION

Based on the foregoing, Plaintiff's claims against Defendant Nathan Jorstad are dismissed.  Defendant's Motion for Summary Judgment on Plaintiff 's claims against Defendant Jorstad (ECF No.96), is **GRANTED.**

**IT IS SO ORDERED**

DATED this 9th day of November, 2015.

BY THE COURT:

RAYMOND P. MOORE
United States District Judge

14